Good morning, everyone. Our first case is United States v. Tinsley, 22-1417. Ms. Ramelli. I would like to reserve 10 minutes for rebuttal. May it please the court. I would like to begin with the argument that was set forth in Section 8 of the appellant's brief, and that is whether offense characteristics for 924 should be reflected in the calculation under the guidelines on a 922. In this case, there were two separate 924 counts, both of which were sentenced separately outside of the guidelines, running consecutively with the guidelines sentence, which in this case was 108 months. It was at the top of the guideline range. We believe that the 924s that supported those two separate counts that were sentenced outside of the guidelines should have been excluded from the count of the guns on the 922 guideline. Mr. Tinsley was assessed with 8 guns. We believe that should have been 6, which would have lowered his point value for the number of guns from 4 to 2, and it would have made a difference in his guideline range. We have located two, if not three, areas under the sentencing guidelines where double counting in the area of guns seems to be prohibited. Under 2K2.4, the guideline states that if a sentence under this guideline is imposed in conjunction with a sentence for the underlying offense, do not apply offense characteristics for possession brandishing. That is the guideline range that is associated with the 924, which we believe must be read in conjunction with the guideline associated with 922, which is 2K2.1. In that guideline language, it states that you only count guns that are unlawfully possessed, unlawfully distributed, including any firearm that the defendant obtained or attempted to obtain. What is missing from the language under 2K2.1 is brandishing, possession, and furtherance of, or even the numbers 924. So under rules of construction, statutory construction, and harmonizing those two provisions that pertain to both 922 and 924, harmonizing them together, we believe it sends a clear message that the 924 counts that are sentenced outside of the guidelines should not be reflected in the guidelines, even on a 922 charge, even under calculations under the guidelines on a 922. Do we have an issue, counsel, with the language of 2K2.4, which says that when calculating an offense level, that applies when calculating the offense level involved in the offense underlying any 924C. And so here, Mr. Tinsley's underlying 924C convictions were the robbery and the possession with the intent to distribute marijuana and methamphetamine. So under application from Note 4 of that, the district court couldn't enhance for possession of a firearm for calculating the offense level for those, for the robbery and for the distribution of methamphetamine and marijuana, and the PSR didn't do that. They didn't apply the offense level enhancements for that. So what should we do with this 2K2.4 application Note 4 language? Well, the Bustamante case actually applied the 2K2.4 analysis and determined in that case that using the offense characteristics under both a conspiracy and a 922 was double counting, that the court could have done one or not the other. That case is cited in both our appellant's brief and in the appellee's brief as counter-authority. It was mentioned, but the argument was made by appellee that there's nothing specifically in the guidelines that prohibits counting. It would be our argument that a 922, because it is calculated under the guidelines, is no different than excluding it from the calculation on the robbery or excluding it from the calculation on the dealing with intent because it is, quote, unquote, an underlying offense in that it is calculated under the guidelines. In the Bustamante case, it was a 922 and a conspiracy. And the court actually ran those concurrently. So there was actually, although there was double counting, I don't know that there was a double sentence that resulted. In this case, the Bustamante analysis is even more compelling because we're talking about a 924, which is statutorily mandatory minimum and running consecutively to a guideline sentence. So the double counting actually caused more harm in this case than it did in Bustamante. But Bustamante did, in fact, apply the 2K2.4 analysis. Even if you're right, how is it plain error? Well, the court is required to analyze the application of the guidelines under a de novo review. And it probably should have been objected to at the trial level. But if there's a case directly on point that says don't do it, and in his case, there was, in fact, a consecutive sentence imposed on top of the 922, then there was clearly an inflated sentence that resulted. Can you point us to any case at all that says don't do it, where there's a 922G offense plus a 924C offense and the district judge did exactly what he did here? Is there any case that you can point to that says don't do that? I don't think so, Your Honor. I can look and I can supplement. I haven't been able to find one. It's not a trick question. No. I'm glad I didn't know to look it. No. But I do think the Bustamante case does apply because it does apply the 2K2.4 analysis, which pertains to the 924, as Ellie pointed out. And, in fact, in this case, it's even more compelling because there is not only a double counting, but there is a double sentence because the 924s must run consecutively. And then to add, if there is an ambiguity, and I think if I can't win this argument, I think I certainly make the argument that the guidelines are ambiguous. And when there is an ambiguity, the tie goes to the defendant under rules of lenity. Rules of lenity apply to statutes, but they also apply to the guidelines. And under these circumstances where it says that you don't apply offense characteristics or possession and brandishing, that's 924 language that takes it out of the guidelines and into its own realm to be sentenced according to the statute. Unless the court would like for me to elaborate further, I would like to touch on one additional argument that I've made in my briefs. Under arguments 1, 2, 3, and even related 4, we have the issue of severance. Severance was requested prior to trial. It was denied. The government brought forth 404 evidence that it believed was relevant to the robbery. The court allowed the 404B evidence. Why was that 404B evidence? I don't understand that. It just seems to me to be evidence that's clearly relevant and intricately interrelated to the bank robbery. I'm not sure why 404B has anything to do with this. I understand the court's concern, except that they were instructed on 404B. So the court refused to sever, allowed the government to bring in 404B evidence, then provided a limiting instruction that created this dichotomy between the evidence that could be used for the robbery not to be used on the possession with intent to deal. And then, as I pointed out in argument number 4, the government was allowed to come in and comment on those same exhibits that the jury was instructed to ignore on the issue of intent to deal. And then the witness was questioned about what those text messages meant. And the witness replied that the text messages meant that he was trying to go buy drugs. So I don't think the jury could have possibly followed the instruction. I don't think the instruction could have possibly been effective to do what the court expected it to do. And that is allow the jury to hear prior bad acts, propensity evidence on the issue of dealing, and then tell the jury to ignore it when deciding the verdicts on two dealing counts. I think it could have been solved with the granting of a motion to sever. It could have been maybe solved with some different analysis, leaving 404B out completely. Let me ask, I know you're into your rebuttal time already, but what's your plain error argument when it comes to Secor's dual testimony? Well, in the questions that were asked of the, well, we have to look at the record as a whole. And sometimes that can't be done contemporaneously when making the objections. But we know now, looking at the transcript, that the government did not take care to separate out expert testimony from dual testimony. And in fact, worse, the quote that I provided in the appellate brief, the government asks, in your experience and training, what do you think this evidence means? Now, an expert may be asked what to render an opinion based on his experience and training in the general sense, but an expert's not supposed to comment on the evidence itself. So, what we have is the same person testifying, wearing two different hats, testimony stretching over 100 pages of transcript, testifying both as an expert and as a dual witness, and commenting directly on the evidence. What did the district judge do in this case that did not follow JET? The JET case, which tells the district judge how to do this, it seems to me that this was sort of a model implication of JET. So, would we have to change the law in our circuit in order to overrule the district judge as to the way he handled the dual testimony here? Well, many of these drug cases stretch over several days. I think the testimony should be divided up from one day to the next. I think the witness should be qualified as an expert at a different time, and his testimony should be cocooned as an expert or cocooned as a lay witness. That would make more sense to the jury. The jury might not even mentally connect the two because several witnesses testify in between. Also, there should be more care in eliciting the testimony as to how it is prefaced. Because if you are taking liberties with 701 and 702 and asking a witness to render an opinion that doesn't touch upon the elements of the case, then care needs to be taken as to how those questions are phrased. Because when you're asking a witness, for instance, well, this gets into one of my other arguments, but one of the officers testifying as a lay witness was asked to render an opinion with regard to the identity of the suspect. And he said, suspect number two is Gary Tensley. Now, he wasn't there. That was based on a culmination of his investigation. It was clearly an opinion based on the evidence. It clearly invaded the province of the jury. But there needs to be more care with what is asked and how it is asked. And with regard to witnesses testifying in both capacities, there should be some physical and some temporal delineation between the hats that they're wearing and the testimony they're providing. And I have gone over. Thank you. Mr. Reeds. May it please the Court. Brian Reitz for the United States. I hope to address all the arguments raised by Mr. Tensley. I want to start with the guidelines issue, particularly to clarify our argument from our brief, which frankly left something to be desired. As the Court pointed out, the application note to 2K2.4, which Mr. Tensley relies on, limits the enhancement based on possession of guns to underlying offenses. And here, Mr. Tensley's underlying offenses were bank robbery and possession with intent to distribute. Those guidelines were not enhanced based on gun possession. How do you reconcile that with our decision in Bustamante, which has been off-cited? Bustamante involved 924C and a conspiracy to deal. It's been cited for the broader proposition that there shall not be double counting. I don't think that's right. Really, post-Bustamante, this Court has moved away from concerns about double counting. The Court has said that unless there is a specific guideline that prohibits explicitly double counting, then double counting is permitted under the guidelines. And if we look at the application note to 2K2.4, it specifies underlying offense, and 922G is not and cannot be an underlying offense to 924C convictions. So the PSR took that under consideration. That's at paragraph 36. So there was no violation of the guidelines. And I want to make a point about plain error, too. Mr. Tinsley said, essentially, tie goes to runner, rule of lenity. But under plain error, that is not enough. That does not meet the plain error standards. Do you concede that we have cases like Hammond that say, assuming we disagree with you and find that there was a guideline error here, we have cases like Hammond that say an incorrect guidelines constitutes, per se, plain error, and that we have remanded for resentencing almost always? I think on the third and fourth prong, plain error and de novo under Supreme Court presence are about the same. But when it's close, then it's not plainly erroneous. So if the Court decides that it's clearly wrong, then under the third and fourth prong, under Melinda Martinez, et cetera, we don't really have much of an argument. But if it's a close case, and Mr. Tinsley's argument is rule of lenity, then plain error should kick in and the Court should not remand. Moving on to the severance, I would just say that to the 404B aspect, to answer Judge Kirsch's question, it's not 404B to the robbery. Everybody operated, and I think rightfully, that it was 404B to the drug dealing. So we think that is the correct prism to the drug dealing, though we would cite the Court to Morgan, which we cited in our brief. When a defendant denies intent to deal the drugs that he admittedly possesses, then prior drug dealing can be admitted under 404B. And of course, it would be a rebalancing test to show the intent to deal. So even if we had severed trials, the drug dealing around the time of the robbery would have been admissible in both trials. I should say, likely would have been admissible in the drug dealing. Of course, the Court would have had to undertaken the balancing test. But we would have argued that drug dealing was admissible because Mr. Tinsley denied his intent. And we think that it likely would have been admissible, and if the Court had admitted it, he would have been well-founded to do so under Morgan. Third, Judge Kirsch, you're right again on the dual role. This is a model of JETT. The judge here did exactly what this Court has said to do in JETT. JETT was the culmination of significant litigation in this Court about the right way to handle this. So JETT is the answer. JETT was circulated under Circuit Rule 40. No judge wanted en banc reviews. So JETT is the answer. The Court complied with JETT here. There is nothing in this Court's precedence that requires separate testimony on separate days from a fact witness and an expert witness. That rule wouldn't be workable. It's true that this case and a number of these cases are multi-day trials, but we have many single-day drug trials. So it just doesn't work, the idea that a witness has to come back a different day and testify as an expert after having testified as a lay witness. Even if he's testifying as both, you know, does an expert witness need to use the word intent to be commenting on a defendant's state of mind? I mean, here we read Secor's testimony, and he very clearly says to the jury that this is what Tinsley was trying to do. That's the same thing as saying intent. What's your view on whether we actually need to see him saying the word intent to run afoul of what we expect of experts? I think it's fair to say that the line here is pretty thin, but what this Court's precedence has said, as long as the answer doesn't go to, particularly go to, I think that the defendant had this particular mental state or state of mind, it's acceptable. So testimony that explains what a defendant is saying or doing from a text message is always going to be close to what he intended to do. That's true, of course. But that is just an explanation describing the facts, not going to an element of the intent. So it is true that the line is thin, but that is the thin line that Rule 704 draws. The testimony can come to that line, but as long as it doesn't actually get into the state of mind, it's acceptable. What, in your view, would be going over the line if Sikor had actually said the words intent and mental state? As opposed to, this is what Tinsley meant, this is what he was trying to do? Under this Court's precedence, yes, I think that's a line. I also would say that Sikor's testimony on this was about the evidence drug dealing that went to the robbery. The same type of analysis wasn't used for the text message around the time of the drug distribution counts. So it doesn't really have the same impact because that was not used for evidence of the drug dealing. It was used as evidence of the robbery. That is slightly more troubling because the jury was not given a temporal limitation. It was given a limiting instruction, to be sure, that says, don't use this drug distribution evidence to evaluate the drug distribution counts in the indictment. The limiting instruction did not say, which arguably would have been clearer, don't use these text messages, these drug distribution text messages from April or May 2019, to evaluate the question of whether he was dealing drugs in September 2019. It didn't say that. So, I wonder how much force there is to your statement that the jury, you know, really wasn't presented with some potential for bleeding over in evaluating the drug distribution counts. They were merely told, don't use this evidence of drug distribution to evaluate that question of drug distribution. I think the instruction clearly conveyed the concept that Your Honor is worried about. The instruction specified the exhibits that the jury was only supposed to consider for the robbery. Could the instruction further have said the dates? I suppose that wouldn't have hurt, but that concept was conveyed by specifying the exhibits and specifying what that evidence could be used for. I think asking for a slightly better instruction is understandable, but that instruction conveyed the concept that Your Honor is concerned about. And on that, we would also go back that if we got to two separate, if the case was severed and we had two separate trials under Morgan, those texts would have been likely admissible under 404B to disprove Mr. Tinsley's lack of intent to distribute argument. If the court has no further questions, we'd be happy to rest on our brief. Okay. Thank you, Mr. Rice. Thank you. Mr. Romali. Just a few additional points. With regard to the argument that this evidence in question admitted under 404B but excluded from consideration of drug counts would have been admissible on the drug counts either at the same or another trial. We don't have that analysis for two reasons. The facts don't suggest necessarily that Tinsley opened the door on his intent by raising lack of intent at trial. He did not testify. That's the problem. The other problem is the trial court simply didn't do the analysis. So we can't say that it would have been admissible without the trial court having gone through the analysis that this type of evidence could have been used because it's straight up propensity if it's not relevant to one of the exceptions under 404B which the government would have the burden to establish. So we can't say that the government would have met that burden when they didn't even try. Also, with regard to the first argument that I raised on the 922 and 924, I did forget to mention in my first part of my argument that there was another aspect of offense characteristics of the guns that was included under the 922 and that was an extended magazine. Now, what we don't know under the charging indictment, if you just look at it, there is no specification with regard to a gun on any of them. So we don't know what guns were used to support the 924s and we don't know what guns were used to support the 922s. We do know that the 922 extended magazine was also used to bump up the guideline calculation by an additional two points. That could have been solved by specifying in the indictment which gun applies to which charge. But that was not done. And having not done so, the government then failed to prove that those two points associated for an extended magazine under the calculations were proven by a preponderance of the evidence. I'm trying to follow you here. Is your argument that that now brings us under the scenario in Bustamante? The offense characteristics... The 922 aspect now. ...might be multifaceted. But the extended magazine is an offense characteristic of a gun. What we don't know is which gun it applied to because the government failed to specify when they charged with two separate 924s what gun supported those charges. So then we have left over the other six. And where is this extended magazine? Which of the guns is it associated with? It's an offense characteristic, but to what? So what we don't know is the government failed to prove that that particular offense characteristic is associated with the 922s that are left to be calculated under the guidelines. So, again, how could it be solved? I mean, what would be the... I mean, to render an opinion that helps next time. The government, if they have multiple counts, and they did choose to bring multiple counts, they brought four gun counts, and they had eight guns to choose from. All they had to do is specify, but they chose not to do so. And in this case, they therefore failed to prove that that particular offense characteristic was associated with the 922s for which the guidelines were required to apply. Thank you. Thank you. Thank you, counsel. The case will be taken under advisement.